IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| GARY RAMSEY, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-12-2375 |
| DEPARTMENT OF VETERANS AFFAIRS, | * |
|  | * |
| Defendant. | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Gary Ramsey, *pro se*, sued the Department of Veterans Affairs (the "VA") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Age Discrimination in Employment Act of 1967 ("ADEA").[2] ECF Nos. 1, 10 at 1-2. Pending is the VA's motion to dismiss or for summary judgment. ECF No. 19. No hearing is necessary. Local Rule 105.6 (D. Md. 2012). For the following reasons, the VA will be granted summary judgment.

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 29 U.S.C. §§ 621 *et seq.*

I. Background[3]

In 1993, the VA hired Ramsey,[4] an African-American male, as a food service worker, paid hourly. ECF Nos. 19-4, 19-5. In 1999, he was reassigned to an hourly position as a housekeeping aid. ECF No. 19-7. In 2005, Valery Coleman hired Ramsey as an information receptionist for the VA Health Care System Customer Service Program, a GS-4 level salaried federal government job. ECF Nos. 19-9, 19-10 at 3. Coleman, an African-American female, was Ramsey's supervisor during his entire tenure in this job. ECF No. 19-11 at 3. Ramsey's job primarily involved some clerical work and fielding questions from patients and their families who approached him at the information desk. ECF Nos. 19-10 at 6-7, 19-14 at 1-2. His job description also required that he assist patients as needed to reach the "appropriate inpatient unit" and to transport discharged patients to their cars or other transportation. ECF No. 19-14 at 2. When escort services were unavailable, he had to provide those services to patients in wheelchairs or who otherwise required special

---

[3] The facts are taken from the VA's motion, ECF No. 19, Ramsey's response in opposition, ECF No. 22, the VA's reply, ECF No. 23, and their supporting exhibits. In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] Ramsey has a bachelor's degree in psychology and served in the military before he worked at the VA. ECF Nos. 19-10 at 30, 22 at 1.

assistance. *Id.* Coleman consistently gave Ramsey a rating of "exceptional" for his customer service performance. ECF No. 19-11 at 14.

Ramsey's performance ratings in other categories were not satisfactory, however. *See id.* Ramsey was frequently late to arrive to work and late to return from his breaks. *Id.* at 6. He occasionally failed to inform Coleman that he intended to take leave and often failed to record the leave he had taken when reporting his hours. *See, e.g.*, *id.* at 4, 8; ECF No. 19-17. He was frequently absent from the information desk during his duty hours. *See, e.g.*, ECF No. 19-11 at 6. His co-workers, two African-American females and one African-American male, complained to Coleman about his absences.[5] ECF No. 19-10 at 8-9, 12. A volunteer refused to work with him, because he often left her alone at the desk. *Id.* at 16; ECF Nos. 19-16, 19-17. Coleman often informally reprimanded Ramsey about his absences and lateness, and he was placed on a formal Performance Improvement Plan (PIP) several times.[6] ECF No. 19-10 at 23-24.

---

[5] One of his co-workers, Jean, was younger than Ramsey. *See* ECF No. 19-10 at 8. The other two co-workers were his age or older. *See id.*

[6] Just before Ramsey's retirement, Coleman asserted that Ramsey's job performance was "ridiculous," and she was planning to institute disciplinary action against him. ECF No. 19-11 at 15.

Ramsey contends that he was often absent from the desk, because he was assisting patients in various ways.[7]  *See, e.g.*, *id.* at 16.  He asserts that Coleman unfairly watched him constantly, and frequently reprimanded him for leaving the desk; he felt that his job was to do everything he could to help patients, including tasks that required him to leave the desk. *Id.* at 9-11.  He contends that his co-workers were not closely watched or reprimanded.  *Id.* at 12.  He acknowledged that Coleman told him he should not leave the desk, and that his co-workers did not generally leave the desk.  *Id.* at 8, 11.  He also acknowledged that he was often late to work--on average about 10-30 minutes late, about three times each month.  *Id.* at 14-15.  Coleman asserts that Ramsey's absences often did not involve helping patients, he was late almost every day, and her close supervision of him was in response to his co-workers'

---

[7] Ramsey left the desk even when he knew he was not supposed to leave for any reason:

> Attorney: You were told that [Vanessa] could not be left by herself.
> Ramsey: Right.
> Vanessa was a volunteer at the desk.  And I don't leave anybody at the desk by them self unless it was an instance where . . . I had to help a patient, that I couldn't be at the desk. . . . I would tell Vanessa, I'll be right back.  That if there's anything that she can't handle, just - just wait till I get back.

ECF No. 19-10 at 16.

4

complaints and her frequent observations of his absence from the desk when she left her office. ECF No. 19-11 at 5-6.

In July 2007, Ramsey applied for two jobs at higher grades than his information receptionist position. *See* ECF No. 22-1 at 3. Applicants for the jobs received scores in five categories to determine their eligibility. *See id.* Applicants had to receive a ranking of "highly qualified" based on their scores to be considered for the jobs. *See id.* Ramsey received low scores in two of the categories; his "qualified" ranking disqualified him from consideration. *See id.* The candidates who were chosen for the jobs received rankings of "highly qualified." *See id.* at 3-4. In October 2007, Ramsey filed an Equal Employment Office (EEO) complaint, alleging that the failure to promote him was due to race and age discrimination and retaliation for his previous EEO complaints. *See id.* at 2-3. In December 2008, his claim was denied for lack of evidence. *See id.* at 9-10.

In September 2008, Ramsey told Coleman that he was taking a class at the University of Phoenix, and he hoped to earn his Master's in Business Administration ("MBA"). ECF No. 19-10 at 16-17. According to Ramsey, Coleman told him that he might be eligible for reimbursement, but that the course did not appear

to be related to his job. *See id.* at 16. Ramsey never received reimbursement for the class.[8] *Id.*

In January 2011, Coleman met with Ramsey and his union representative to inform them that if Ramsey's work performance did not improve, she would begin the process of written counseling with him, a higher level of discipline. *Id.* at 25; ECF No. 19-11 at 6. During his March 2011 midyear review, Coleman told Ramsey that his performance had not improved and she planned to begin the written counseling process. *See* ECF No. 19-10 at 25-26. In response, Ramsey told Coleman he planned to retire in April. ECF No. 19-11 at 8. Ramsey did not retire in April, but asserts that Coleman told him that she had begun the process to fire him.[9] ECF No. 19-10 at 22, 27. Ramsey retired in June 2011. *Id.* at 27.

Before his retirement, Ramsey received a gold pin award--an award for exceptional actions by VA employees. ECF No. 19-11 at 12. He was recommended for the award because he helped a nurse find her wallet. *See* ECF No. 19-20 at 2. According to Ramsey,

---

[8] Ramsey asserts that he submitted the necessary paperwork for reimbursement, but acknowledges that it was late. ECF No. 19-10 at 17-18. He contends that Coleman never gave his paperwork to the appropriate department, and, as a result, he was not reimbursed. *See id.* at 18. Coleman contends that Ramsey never submitted any paperwork. ECF No. 19-11 at 11.

[9] Coleman denies that she was planning to fire Ramsey. ECF No. 19-11 at 15-16.

the award was intentionally withheld for several months, because Coleman thought he did not deserve it. ECF No. 19-10 at 19-20. According to Coleman, gold pin awards are generally given out at staff meetings, and employees are not told in advance that they will receive an award. ECF No. 19-11 at 12-13. Ramsey was scheduled to attend at least three staff meetings during which he would have received the award, but he did not attend the meetings.[10] *Id.* at 12. Ramsey was presented with the award at his retirement party. *Id.* at 13.

On September 21, 2011, Ramsey filed a discrimination complaint with the VA's Office of Resolution Management ("ORM"). ECF No. 19-23 at 1. On July 19, 2012 after the ORM's investigation, the VA's Office of Employment Discrimination issued a written opinion which concluded that Ramsey "failed to prove that he was discriminated against as alleged." ECF No. 19-24 at 1, 12. He was issued a right to sue notice. *Id.* at 13.

On August 9, 2012, Ramsey timely filed a complaint against the VA.[11] ECF No. 1. He alleged that he was subjected to race

---

[10] Ramsey acknowledges that he never attended these meetings, because he found them "boring" and a "waste of time" and preferred to spend the time helping patients. ECF No. 19-10 at 20.

[11] The Court granted Ramsey's motion for leave to proceed *in forma pauperis* but denied his motion to appoint counsel. ECF No. 4.

and age discrimination resulting in a hostile work environment and his constructive discharge in violation of the ADEA and Title VII. *See id.* at 10-12. He also alleged that the VA retaliated against him because of his EEO complaints. *See id.* On November 28, 2012, upon Court order,[12] Ramsey filed a supplemental complaint, alleging discriminatory and retaliatory failure to promote. ECF No. 10. To support his various claims, he asserts that Coleman: (1) "constantly asked about [his] whereabouts;" (2) "constantly watched [him];" (3) "refused to sign off on paperwork so that [he] could be reimbursed for a course he took;" and (4) delayed giving him the gold pin award until he retired. ECF No. 1 at 2. He contends that if he had been younger,[13] white,[14] or had not made EEO complaints, these actions would not have occurred. *See, e.g.*, ECF No. 19-10 at 19. He also asserts that he would have been promoted or not

---

[12] The Court ordered Ramsey "to file a Supplemental Complaint using court-provided forms," before the VA was required to respond to his complaint. ECF No. 4.

[13] "My age was a factor because I think that -- that management saw my age, how old I was, approximately, and they just felt that I was set in my ways. . . . [I]f I was a younger employee . . . they would probably treat me differently." ECF No. 19-10 at 8.

[14] "My race was a factor because historically that's how black people are treated. . . . I'm sure that if I had been white I wouldn't have been treated that way." ECF No. 19-10 at 8.

forced to retire, if he was younger, white,[15] or had not complained of his treatment. *See id.* at 30.

On November 28, 2012, Ramsey moved again for appointment of counsel. ECF No. 9. On March 18, 2013, the Court denied this motion without prejudice.[16] ECF No. 21.

On March 12, 2013, the VA moved to dismiss Ramsey's complaint for failure to state a claim or, alternatively, for summary judgment. ECF No. 19. On March 29, 2013, Ramsey responded. ECF No. 22. On April 12, 2013, the VA replied. ECF No. 23.

---

[15] In his response to the VA's motion, Ramsey asserts: "If you look at whites with my education and background you will see that they are higher than a GS 4 and don't forget years of service." ECF No. 22 at 2.

[16] The Court found that Ramsey "failed to show a particular need or exceptional circumstances" requiring appointment of counsel, because: (1) Ramsey had demonstrated an "ability to present his complaint and pursue his administrative remedies;" and (2) his "employment discrimination claims . . . do not involve complex issues for review." ECF No. 21 at 2.

II. Motion for Summary Judgment[17]

A. Standard of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[18] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[17] Summary judgment is generally inappropriate, when the "'parties have not had an opportunity for reasonable discovery.'" *Madock v. McHugh*, CIV.A. ELH-10-02706, 2011 WL 3654460, at *10 (D. Md. Aug. 18, 2011) *aff'd,* 469 F. App'x 200 (4th Cir. 2012) (*quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011)). However, the party opposing summary judgment "'cannot complain that summary judgment was granted without discovery,'" if the opposing party does not assert that more time is needed for discovery through a Rule 56 affidavit. *See id.* (*quoting Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). Because Ramsey has not asserted that more time is needed for discovery, the Court will construe the VA's motion as one for summary judgment.

[18] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

10

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in his favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Hostile Work Environment

Title VII prohibits an employer from discriminating against an employee because of race. 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to . . . privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may plead a hostile work environment claim under these statutes.[19]

To survive an employer's motion for summary judgment on his hostile work environment claims, Ramsey must show that the

---

[19] *See, e.g., E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174 (4th Cir. 2009); *Baqir v. Principi,* 434 F.3d 733, 746 n. 14 (4th Cir. 2006) (noting that hostile work environment claims are cognizable under Title VII and assuming, without deciding, that a plaintiff aged 40 or older may bring a hostile work environment claim under the ADEA); *see also Graham v. Prince George's County,* 191 Fed. Appx. 202, 204 (4th Cir. 2006) (deciding the merits of an ADEA hostile work environment claim).

offending conduct was: (1) unwelcome; (2) based on race or age; (3) subjectively and objectively severe or pervasive enough to alter the plaintiff's conditions of employment and create an abusive atmosphere; and (4) imputable to the employer. *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183-84 (4th Cir. 2001); *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998).

To establish this claim, Ramsey must show that "but for" his race or age, he "would not have been the victim of the alleged discrimination." *See Gilliam v. S.C. Dep't of Juvenile Justice,* 474 F.3d 134, 142 (4th Cir. 2007); *Causey*, 162 F.3d at 801. Ramsey asserts that "if I had been white, I wouldn't have been treated that way" and "if I had been younger, I probably wouldn't have been treated that way." ECF No. 19-10 at 16. The VA contends that "[n]othing Ramsey identifies as harassment . . . [has] been linked to discriminatory animus." ECF No. 19-1 at 12.

1. Hostile Work Environment Based on Race

Ramsey must provide "legally sufficient evidence" of race discrimination in order to "transform an ordinary [workplace] conflict . . . into an actionable claim of discrimination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281-82 (4th Cir. 2000) ("Even if [defendant] harbored some personal dislike of [plaintiff] that made [plaintiff's] job more difficult or stressful, an employer is not required to like his employees.")

12

(internal quotations omitted). Absent direct evidence of racial animosity, the plaintiff may rely on evidence of differential treatment of similarly situated white employees.[20] *See Gilliam*, 474 F.3d at 142. To be sufficient, the evidence must consist of more than speculation, circumstantial evidence, and "conclusory" or "general" statements--the plaintiff's evidence must prove a "direct or inferential connection between the plaintiff's allegations and her race" supported by specific evidence.[21] General allegations of differential treatment must be substantiated by "accounts of specific dates, times or circumstances."[22]

Ramsey has offered no evidence, beyond his speculations,[23] that any of the actions he claims contributed to a hostile work environment were motivated by racial animus. *See Sonpon v. Grafton Sch., Inc.*, 181 F. Supp. 2d 494, 503 (D. Md. 2002) ("Plaintiff's mere speculation that [defendant] was motivated by

---

[20] Here, all of Ramsey's "similarly situated" colleagues were also African-American, as was his supervisor. ECF Nos. 19-10 at 8, 19-11 at 3.

[21] *See id.*; *Hawkins*, 203 F.3d at 282; *Khoury v. Meserve*, 268 F. Supp. 2d 600, 612-13 (D. Md. 2003) *aff'd,* 85 F. App'x 960 (4th Cir. 2004); *Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 863-64 (D. Md. 2004).

[22] *See Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994); *Gilliam*, 474 F.3d at 142-43; *Jackson v. State of Maryland*, 171 F. Supp. 2d 532, 541 (D. Md. 2001).

[23] *See, e.g.*, *supra* note 14.

racial animus in giving her a written rather than [oral] reprimand is not evidence."). He alleges that he was more closely supervised than other employees, his supervisor delayed his receipt of an award, and he was not reimbursed for a class, *see* ECF No. 1 at 2, but he has offered no evidence that these personnel decisions were based on race.[24] Thus, these incidents cannot support an actionable claim of discrimination.[25]

Similarly, Ramsey alleges that he was unfairly reprimanded more than other employees for his absences from the desk because

---

[24] In his deposition testimony, Ramsey identifies non-race-based reasons for each of the personnel decisions about which he complains. Ramsey acknowledges that he was more closely supervised, and reprimanded more, because he disagreed with Coleman on how much time he should spend at the reception desk. *See, e.g.*, ECF No. 19-10 at 5 ("But when I go away from the desk to help the patients, I'm constantly being told by Valery that I'm not doing my job because I'm away from the desk. . . . "[I]f Valery looked [at the desk] to see that I'm not there . . . [she] assumed that I'm not doing my job."). He acknowledged that it was not "unacceptable" for her to closely supervise him, because "[s]he's my boss." *Id.* at 10. He also opines that his award was delayed because Coleman felt he did not deserve it, *see* ECF No. 19-10 at 20, and that he was denied reimbursement for the class because Coleman felt it was not job-related, *see* ECF No. 19-10 at 18.

[25] *See Simmington v. Gates*, CIV.A. DKC 08-3169, 2010 WL 1346462, at *15 (D. Md. Mar. 30, 2010) ("That Plaintiff may have felt demeaned or demoralized by the actions of management does not create a federal cause of action for hostile work environment merely because Plaintiff happens to belong to a class protected by Title VII."); *see also Steadman v. Crystal Gateway Marriott*, CIV.A. 01-1083-A, 2002 WL 32502351, at *5 (E.D. Va. Mar. 11, 2002) *aff'd,* 45 F. App'x 288 (4th Cir. 2002) ("Congress did not intend for Title VII to turn the federal courts into human resource or personnel departments . . . .").

of his race, *see* ECF No. 19-10 at 16, 34, but he provides no evidence to support this claim.[26] Even if no other employee was disciplined for similar conduct, disparate treatment that is not based on Ramsey's race does not create a legally cognizable hostile work environment claim. *See Hawkins*, 203 F.3d at 280-82 (denying plaintiff's hostile work environment claim, because plaintiff never showed that her supervisor's "low regard" for her in comparison to her white peers, and resulting uneven treatment, "was due to race").

2. Hostile Work Environment Based on Age

Ramsey has also failed to provide any evidence that any of the incidents about which he complained were motivated by age discrimination. He has only made "conclusory statements" that, if he had been younger, he would have received more favorable treatment[27]--such statements are insufficient to support an age discrimination claim. *See Causey*, 162 F.3d at 802. Ramsey alleged that his "similarly situated" co-workers were treated

---

[26] There is evidence that Ramsey was reprimanded for excessive lateness and absence from the information desk. *See, e.g.*, ECF No. 19-11 at 5-6 ("In January of 2011[,] I actually had a sit-down with Mr. Ramsey and his union representative . . . [His lateness] began to be worse. [I]t went from once in a while to every day. And that just wasn't acceptable."). Although Ramsey contends that he would not have been reprimanded if he was white, *see* ECF No. 19-10 at 16, he offers no evidence beyond his own speculations to support this claim.

[27] *See, e.g.*, ECF No. 19-10 at 15 ("I think that if I had been younger, I probably wouldn't have been treated that way.").

15

differently.[28] *See* ECF No. 19-10 at 12. However, only his co-worker Jean was younger, *see* ECF No. 19-10 at 8, and he acknowledged that Jean never left the information desk during her shifts, *see* ECF No. 19-10 at 7-8.[29] Accordingly, Ramsey has failed to show that he was treated differently because of his age.

Thus, the Court will grant the VA summary judgment on Ramsey's hostile work environment claims. *See Bouchat,* 346 F.3d at 526 (function of trial judge on summary judgment is to "prevent factually unsupported claims . . . from proceeding to trial").

C. Retaliation

Title VII and the ADEA prohibit employers from discriminating against their employees because: (1) the employee has opposed illegal employment practices; and (2) the employee has made a charge, testified, assisted, or participated in an investigation. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d);

---

[28] *See Causey*, 162 F.3d at 801 (noting that "age based animosity could be shown by [defendant's] differential treatment of similarly situated younger . . . employees").

[29] Ramsey also asserted that Jean received a more detailed evaluation than he did, ECF No. 19-10 at 21. However this general allegation, without substantiation with "specific, dates, times, or circumstances" is insufficient to support a hostile work environment claim. *See Carter*, 33 F.3d at 461; *Jackson*, 171 F. Supp. 2d at 541.

16

*Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 684 (4th Cir. 2009); *Johnson v. Portfolio Recovery Associates, LLC*, 682 F. Supp. 2d 560, 569 (E.D. Va. 2009).

To survive an employer's motion for summary judgment, a plaintiff must show direct evidence of discrimination, or establish a *prima facie* case that raises an inference of illegal conduct.[30] The burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies to retaliation claims.[31] First, the plaintiff must establish a *prima facie* case of retaliation. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). The burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse action. *See id.* The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by showing "both that the reason was false *and* that discrimination was the real reason for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (internal quotation marks omitted).

To establish a *prima facie* retaliation claim under Title VII or the ADEA, the plaintiff must show: (1) protected

[30] *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

[31] *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir.2000); *Johnson*, 309 F. App'x at 684.

17

activity; (2) "materially" adverse employment action; and (3) a causal connection between the protected activity and materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003); *Johnson*, 309 F. App'x at 684. An employee engages in protected activity if he opposes an "unlawful employment practice" like discrimination. *See* § 2000e-2(a)(1), -3(a); § 623(d).

A "materially" adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 68, 126 S.Ct. 2405; *see also Harman v. Unisys Corp.,* 356 Fed. App'x. 638, 641 (4th Cir. 2009). Because employees are protected "not from all retaliation, but from retaliation that produces an injury or harm," materially adverse actions do not include "trivial" harms. *See Burlington,* 548 U.S. at 67-69, 72-73, 126 S. Ct. 2405 at 2414-15. If the employer takes the action "shortly after" learning about the protected activity, courts may infer a causal connection between the two. *Price v. Thompson,* 380 F.3d 209, 213 (4th Cir. 2004).

Ramsey alleges that the VA discriminated against him because of his EEO complaints. *See* ECF No. 10 at 2. In retaliation for his complaints, Ramsey alleges these materially adverse actions: (1) he was closely supervised by Coleman; (2)

18

he was not reimbursed for a course; (3) his receipt of an award was delayed;[32] (4) he was forced to retire;[33] and (5) he was not promoted. ECF Nos. 1 at 2, 22 at 2. The VA asserts that Ramsey's "retaliatory harassment claim fails because there was no harassment," and any adverse actions it took were "legitimate" and "non-discriminatory." ECF No. 19-1 at 14.

Assuming, without deciding, that Ramsey has established a *prima facie* case of discrimination, Ramsey has not rebutted the VA's "legitimate, nondiscriminatory" reasons for the actions about which he complains. *See Laber,* 438 F.3d at 432. The VA

---

[32] Failure to award a discretionary bonus or performance award is not a materially adverse action. *See Schamann v. O'Keefe,* 314 F. Supp. 2d 515, 531 (D. Md. 2004). Even if, as Ramsey claims, Coleman lacked discretion in granting him the award, *see* ECF No. 19-10 at 19, merely delaying his receipt of the award is a "petty slight" that is insufficiently material to support a *prima facie* case of retaliation. *See Burlington,* 548 U.S. at 67-68, 126 S. Ct. at 2414-15 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

[33] Ramsey's last EEO complaint as a VA employee was in 2007. ECF No. 19-25. He retired in 2011. ECF No. 19-10 at 27. These events are too far apart for the Court to infer a causal connection between them. *See, e.g., Robinson v. BGM Am., Inc.,* CIV.A. 4:11-3459-MGL, 2013 WL 4042187, at *10-*11 (D.S.C. Aug. 8, 2013) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action negates any inference that a causal connection exists between the two.") (*quoting Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir. 1998) (internal quotation marks and punctuation omitted)). Thus, Ramsey's retirement cannot support a *prima facie* case of retaliation.

asserts that Coleman closely supervised him in reaction "to discrete reports or observations that Ramsey was absent from his post for prolonged periods." ECF No. 19-1 at 14. Ramsey acknowledges that he was often absent from the desk, his co-workers complained about his absences, and Coleman instructed him not to leave the desk. ECF No. 19-10 at 9-12. Thus, Ramsey has not rebutted the VA's proffered legitimate reasons for his close supervision.

Even if Ramsey did submit paperwork for course reimbursement, he acknowledges that Coleman thought the course was not related to his job, and he was late submitting his paperwork[34]--two non-discriminatory reasons for denying reimbursement. Finally, although the VA denied Ramsey's application for promotions to two positions, Ramsey has not rebutted the VA's assertion that he was not qualified for the positions and the applicants chosen were. *See* ECF No. 22-1 at 3-4; *e.g.*, *Orenge v. Veneman*, 218 F. Supp. 2d 758, 764 (D. Md. 2002) ("Relative employee qualifications 'are widely recognized as valid, non-discriminatory bases for any adverse employment decision.'") (*quoting Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996)). Ramsey has failed to show an actionable claim of retaliation.

---

[34] *See* ECF No. 19-10 at 16-18.

20

D. Adverse Employment Actions

Ramsey alleges that he was not promoted, and that he was forced to resign, because of age and race discrimination. *See* ECF No. 22 at 2-3. The VA asserts that Ramsey's failure to promote claims must fail, because he did not identify any positions for which he was rejected.[35] *See* ECF No. 19-1 at 15. It contends that his constructive discharge claims must fail because he cannot show "his working conditions were 'intolerable.'" *See id.* at 16.

A plaintiff may establish a claim of discrimination under Title VII or the ADEA "by demonstrating through direct or circumstantial evidence that [discrimination] motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).

---

[35] The VA asserts in its reply brief that Ramsey failed to timely exhaust his administrative remedies, because he did not file suit within 90 days after the VA issued a final decision denying his failure to promote claim in connection with his failed application for two higher-level jobs. *See* ECF No. 23 at 1. The VA contends, without citation, that the Court must accordingly dismiss Ramsey's failure to promote claim for lack of jurisdiction. *Id.* However, "a plaintiff's failure to timely exhaust administrative remedies 'is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Ward v. Comm'r of Soc. Sec.*, CIV. WDQ-11-1004, 2012 WL 122412, at *3 (D. Md. Jan. 12, 2012) (*quoting Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)). Accordingly, Ramsey's failures do not deprive the Court of jurisdiction, and the Court will decide his claim on the merits.

Ramsey has offered no direct or circumstantial evidence that he was not promoted or that he was constructively discharged, even in part, because of age or race discrimination.[36] *See Hill*, 354 F.3d at 284. Accordingly, to survive summary judgment, he must proceed under the *McDonnell Douglas* burden-shifting framework. *See id.* at 285.[37]

### 1. Failure to Promote

To establish a *prima facie* case of failure to promote on the basis of race or age bias, Ramsey must prove: "(1) [he] is a member of a protected group,[38] (2) there was a specific position for which [he] applied, (3) [he] was qualified for that position, and (4) [the VA] rejected [his] application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004);

---

[36] Ramsey only offers his own speculations that if he was younger, or white, he would have been promoted. *See, e.g.*, ECF No. 19-10 at 30. "While a Title VII plaintiff may present direct or indirect evidence to support [his] claim of discrimination, unsupported speculation is insufficient." *Evans*, 80 F.3d at 960.

[37] *See also, e.g.*, *Martin v. Scott & Stringfellow, Inc.*, 643 F. Supp. 2d 770, 782 (E.D. Va. 2009) *aff'd*, 352 F. App'x 778 (4th Cir. 2009) (applying *Hill* framework to constructive discharge claim); *Harris v. Rumsfeld*, 428 F. Supp. 2d 460, 465 (E.D. Va. 2006) (applying *Hill* framework to failure to promote claim).

[38] Ramsey is in a protected class under Title VII, because he is African-American. *See* ECF No. 19-10 at 2; *Carter*, 33 F.3d at 459. He is in a protected group under the ADEA, because he was over 40 years old when he was denied a promotion. *See* ECF No. 22-1 at 8; *Laber*, 438 F.3d at 430.

*Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004); *Hildebrandt v. W.R. Grace & Co.-Conn.*, 492 F. Supp. 2d 516, 518 (D. Md. 2007). Under *McDonnell Douglas*, "[a]n employer may rebut a *prima facie* case by demonstrating that the person promoted was better-qualified for the position." *Honor*, 383 F.3d at 189 (*citing Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995); *Hildebrandt*, 492 F. Supp. 2d at 518. The burden then shifts to the employee to demonstrate that the employer's "reason for promoting the successful applicant was pretextual." *Honor*, 383 F.3d at 189.

Ramsey has identified two positions for which he applied, but his evidence demonstrates that he was not qualified for those positions. *See* ECF No. 22-1 at 3-4. Although he apparently asserts that his long tenure at the VA and education and military background should have automatically qualified him for promotion,[39] *see* ECF No. 19-10 at 30-31, he acknowledges that he frequently received poor job evaluations[40] and that his

---

[39] Tenure alone is generally insufficient to show qualification for a promotion. *See Locklear v. Sealey*, 7:10-CV-121-FL, 2012 WL 1858931, at *6 (E.D.N.C. May 22, 2012) ("It is entirely reasonable that an employer may favor a candidate's unique experience with the functions of a particular position more than simply the candidate who has been around the longest.") (*citing Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008)).

[40] *See, e.g.*, ECF No. 19-10 at 21, 31. Ramsey also admitted that he had been placed on a PIP several times. *Id.* at 24, 29.

evaluations would harm his promotion chances.[41]  Ramsey states

that he was not promoted during his 30 years of government

service,[42] "because of [government] policies," ECF No. 10 at 2,

but does not identify those policies or connect them to his job

applications.  Accordingly, Ramsey has failed to prove a *prima*

*facie* case of failure to promote.[43]

---

[41] "[F]irst of all, I didn't have good evaluations.  I mean, if I apply for a job, they would consider that."  ECF No. 19-10 at 31.  *See Phair v. Montgomery Cnty. Pub. Sch.*, 3 F. Supp. 2d 644, 647 (D. Md. 1997) *aff'd,* 141 F.3d 1159 (4th Cir. 1998) (denying claim when plaintiff failed to show she was qualified for job she applied for, because "the record is replete with documentary evidence of substandard evaluations and admonitions from supervisors regarding Plaintiff's work in positions substantially less demanding than that which she was seeking"); *cf. Jackson v. Winter*, 497 F. Supp. 2d 759, 768 (E.D. Va. 2007) (Plaintiff "'cannot establish [his] own criteria for judging [his] qualifications for the promotion. [He] must compete for the promotion based on the qualifications established by [his] employer.'") (*quoting Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005)).

[42] In August 2005, Ramsey was promoted from an hourly position as a housekeeping aid at the VA to a salaried position as an information receptionist.  ECF No. 19-9.  Coleman testified that she hired him as an information receptionist because of his "performance," and his age and previous EEO complaints were not factors in her hiring decision.  ECF No. 19-11 at 3-4.

[43] Even if Ramsey could prove he was qualified for the jobs, and otherwise establish a *prima facie* case, he does not rebut evidence that the VA hired two people who were more qualified than him for the positions.  *See* ECF No. 22-1 at 3-4.  Thus, Ramsey cannot establish an actionable claim of discriminatory failure to promote.  *See Honor*, 383 F.3d at 189.

### 2. Constructive Discharge

Constructive discharge occurs when an employer "deliberately [makes an employee's] working conditions intolerable in an effort to induce [him] to quit." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001). To demonstrate constructive discharge, Ramsey must prove: (1) the VA's intentional actions were motivated by age or race bias; and (2) Ramsey's working conditions were objectively intolerable. *Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 294 (4th Cir. 2006); *Honor*, 383 F.3d at 186-87.

#### a. Constructive discharge on the basis of race

To establish a *prima facie* case of racially motivated constructive discharge, Ramsey must prove: (1) he "is a member of a protected class;" (2) he "was qualified for the job and performed the job satisfactorily;" (3) he was constructively discharged; and (4) "the position remained open to similarly qualified applicants after [Ramsey's] dismissal." *See Carter*, 33 F.3d at 458-59.

In determining whether the plaintiff was meeting the employer's expectations, "it is the employer's perception that matters, not the employee's self-assessment." *Martin*, 643 F. Supp. 2d at 785 (*citing King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). Ramsey has failed to establish that he was performing his job satisfactorily in the VA's opinion. Although

25

Ramsey had received reviews of "exceptional" in customer service, ECF No. 19-11 at 14, he consistently received poor evaluations in his other areas of job performance, and his overall ratings were often low, *see* ECF Nos. 19-10 at 23, 19-11 at 14. He was placed on a PIP several times to address job performance problems that his supervisor characterized as "ridiculous." *See* ECF No. 19-11 at 15-16, 23-24. Right before he retired, he was told he would receive written counseling to address several performance problems that he had failed to improve on despite previous oral warnings. *See* ECF Nos. 19-10 at 26, 19-11 at 15. Accordingly, Ramsey has failed to show a *prima facie* case of constructive discharge on the basis of race.[44]

b. Constructive discharge on the basis of age

To establish a *prima facie* case of constructive discharge motivated by age bias, Ramsey must prove: "(1) he was constructively discharged; (2) he was at least 40 years old at that time; (3) he was performing his job duties at a level that met [the VA's] legitimate expectations at the time of his

---

[44] *See, e.g.*, *Hill*, 354 F.3d at 298 ("Hill has failed to establish a prima facie case of [discrimination under Title VII or the ADEA] because, by her own admissions of the work performance and rules infractions that led to her termination, she has failed to demonstrate that she was performing her job duties at a level that met Lockheed's legitimate expectations at the time of the adverse employment action.").

constructive discharge; and (4) he was treated more harshly than other similarly situated younger employees." *Alba*, 198 F. App'x at 294 (*citing Hill*, 354 F.3d at 285).

For the reasons discussed above, Ramsey has failed to show he was meeting the VA's legitimate performance expectations. *See supra* Section II.D.2.a. Ramsey has failed to show a *prima facie* case of constructive discharge on the basis of age.[45]

III. Conclusion

For the reasons stated above, the defendant's motion for summary judgment will be granted.

___11/20/13___
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[45] *See supra* note 44.